UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 11-95 |
| SERGIO GRIMALDO, ET AL. | SECTION: R |

## ORDER AND REASONS

Defendant Noe Juarez is charged with conspiracy to distribute and to possess with the intent to distribute cocaine, as well as with conspiracy to possess firearms in furtherance of a drug trafficking crime.[1] The Government moves the Court to permit extrinsic evidence of Juarez's similar conduct in furtherance of two other, uncharged drug conspiracies under Federal Rule of Evidence 404(b).[2] Juarez objects to the Government's introducing this evidence on the grounds that it is inadmissible character evidence and unduly prejudicial.[3] Because the Court finds that the potential prejudice of the evidence does not substantially outweigh its probative value, the Court grants the Government's motion.

---

[1] R. Doc. 229.

[2] R. Doc. 317.

[3] R. Doc. 321.

## I.   BACKGROUND

On April 2, 2015, a federal grand jury in the Eastern District of Louisiana returned a superseding indictment against defendant Noe Juarez and alleged co-conspirator Sergio Grimaldo.[4]  Count One charges Juarez and Grimaldo with conspiring to distribute and to possess with the intent to distribute five kilograms or more of cocaine.[5]  According to the indictment, this drug conspiracy began "at a time unknown and continu[ed] until in or about the year 2012."[6]  Count Two charges Juarez and Grimaldo with conspiring to possess firearms in furtherance of the drug trafficking crime alleged in Count One.[7]  According to the indictment, this conduct began "on a date unknown but prior to July 17, 2013 and continu[ed] [until] on or about the date of this Superseding Indictment," or April 2, 2015.[8]

---

[4]   R. Doc. 229.  The grand jury's original indictment, issued on April 21, 2011, did not include charges against Juarez.  *See* R. Doc. 1.

[5]   R. Doc. 229 at 1.

[6]   *Id.*

[7]   *Id.* at 2.

[8]   *Id.*

Grimaldo pleaded guilty on September 23, 2015.[9] Juarez pleaded not guilty on April 23, 2015,[10] and is scheduled to proceed to trial on January 11, 2016.[11] According to the Government's theory of the case, Juarez, a former member of the Houston Police Department, knew that Grimaldo and others received large shipments of cocaine from the "Los Zetas" Mexican drug cartel and distributed that cocaine in Houma, Louisiana.[12] The Government alleges that although there is no evidence that Juarez directly handled any drugs, Juarez provided "vital support" to the conspiracy by furnishing conspirators with firearms, bullet-proof vests, vehicles, and other items to use in their drug trade.[13] Juarez also allegedly provided conspirators with sensitive law enforcement surveillance information so that the conspirators could evade police detection.[14]

The Government represents, and Juarez does not dispute, that Juarez has consistently denied any involvement in the drug and firearm conspiracy

---

[9] *See* R. Doc. 278.

[10] *See* R. Doc. 249.

[11] *See* R. Doc. 303.

[12] *See* R. Doc. 317 at 4-6.

[13] *See id.* at 6-8.

[14] *See id.* at 8-9.

detailed in the indictment.[15] According to the Government, after Juarez was arrested for the offense and confronted with the evidence against him, Juarez "repeatedly denied providing vehicles, weapons, or information to drug dealers. He denied that he had any knowledge that he dealt with drug traffickers or derived any profit from them."[16]

In anticipation of trial, the Government now moves the Court for permission to introduce extrinsic evidence of two other, uncharged drug conspiracies allegedly involving Juarez. The Government proposes to introduce evidence that Juarez provided "virtually the same type of assistance" to the "Gallegos Conspiracy" and the "Castaneda Conspiracy."[17]

In furtherance of the Gallegos Conspiracy, Juarez allegedly provided to conspirators "at least seven" firearms, the use of Juarez's 2008 Cadillac Escalade, and police surveillance information.[18] On one occasion, a Houston police officer stopped Juarez while driving a drug conspirator's vehicle. According to the Government, this police stop prompted Juarez to warn the

---

[15]   *See id.* at 15.

[16]   *Id.*

[17]   *Id.* at 9-10, 13.

[18]   *Id.* at 10-12.

4

conspirator that his vehicle was "hot," meaning under police surveillance.[19] On other occasion, Juarez allegedly asked a drug conspirator whether he was "wearing a wire," which the Government suggests indicates that Juarez understood that he was involved in illegal activity.[20]

According to the Government, Juarez also provided firearms to an FBI confidential source working within the Castaneda Conspiracy.[21] The Government proposes to present evidence that Juarez met with this confidential source on nine separate occasions during 2011 and 2012, and each meeting was recorded.[22] Transcripts of the conversations allegedly reveal that Juarez discussed police intelligence and removing serial numbers from firearms, among other topics.[23]

Juarez objects to the admissibility of the Government's evidence. Juarez argues that this extrinsic evidence of other conspiracies is inadmissible character evidence and that it is unduly prejudicial.

---

[19] *Id.* at 12.

[20] *Id.*

[21] *Id.* at 13.

[22] *Id.* at 14.

[23] R. Doc. 317, Exhibits F - N.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Evidence 404(b) is "designed to guard against the inherent danger" that the court's admitting evidence of other bad acts may lead a jury "to convict a defendant not of the charged offense, but instead of an extrinsic offense." *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007). Rule 404(b) provides:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)-(2).

The phrase "crime, wrong, or other act" includes only those acts that are "extrinsic" to the crimes charged in the indictment. *See United States v. Crawley*, 533 F.3d 349, 353-54 (5th Cir. 2008). Evidence intrinsic to the charged offense does not implicate Rule 404(b). *Id.* "Other act" evidence is intrinsic when: (1) evidence of the other act is "inextricably intertwined" with evidence of the charged offense; (2) the charged offense and the other act are part of the same "criminal episode"; or (3) the other act was a necessary preliminary step toward completing the charged offense. *Id.* Accordingly,

before deciding whether Rule 404(b) bars admitting certain evidence, a court must make an initial inquiry into the relationship between the evidence of the other act and the crime charged in the indictment. As noted, if the evidence is intrinsic to the charge, no Rule 404(b) analysis is necessary.

If the court determines that the challenged evidence is extrinsic to the charged offense, it must evaluate the evidence's admissibility according to a two-part test. *United States v. Beechum*, 582 F.2d 898, 909-18 (5th Cir. 1978) (en banc); *see also United States v. Sumlin*, 489 F.3d 683, 690 (5th Cir. 2007). First, the court must determine whether the extrinsic evidence is "relevant to an issue other than the defendant's character," such as the defendant's motive, intent, or knowledge. *Beechum*, 582 F.2d at 911. Second, if the court determines that the evidence is relevant to another issue, the court must determine that the evidence "possess[es] probative value that is not substantially outweighed by its undue prejudice and . . . meet[s] the other requirements of rule 403." *Id.* Federal Rule of Evidence 403 permits courts to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

**B.   Analysis**

As a threshold matter, the Court finds that the Government has presented sufficient facts to satisfy the Court, under Federal Rule of Evidence 104(b), that Juarez was allegedly involved in these two other conspiracies. *See id.* at 912.

It is undisputed that the Government's evidence of the Gallegos Conspiracy and the Castaneda Conspiracy are extrinsic to the crimes charged in the indictment. The Government represents, and Juarez does not dispute, that each of these conspiracies "operated independently of each other."[24] *Cf. United States v. Kinchen*, 729 F.3d 466, 471 (5th Cir. 2013) ("Intrinsic evidence . . . prov[es] the immediate context of events in time and place."). Therefore, the Court proceeds directly to the two-part test outlined in *Beechum*.

    *1.    The Extrinsic Evidence Is Relevant to an Issue Other Than Defendant's Character*

The Government argues that the extrinsic evidence of Juarez's involvement in two other drug conspiracies is relevant to proving Juarez's intent, plan, and absence of mistake regarding his participation in the charged offense. The Government further argues that each of these issues is pertinent to the charged offense because Juarez has pleaded not guilty and has denied

---

[24]    R. Doc. 317 at 10.

8

that he provided weapons, vehicles, or police information to drug dealers.[25] Rule 404(b) generally permits introducing extrinsic evidence of other acts for each of these purposes. *See* Fed. R. Evid. 404(b)(2).

The test for relevancy under the first prong of the *Beechum* analysis is the same as that articulated in Federal Rule of Evidence 401: "Evidence is relevant if has any tendency to make a fact more or less probable than it would be without the evidence[.]" Fed. R. Evid. 401(a); *see Beechum*, 582 F.2d at 911. The issue is then whether the Government's extrinsic evidence makes Juarez's intent or plan to engage in a criminal conspiracy, or his absence of mistake in doing so, more or less probable than it would be without the evidence.

As the Fifth Circuit holds, "[t]he mere entry of a not guilty plea in a conspiracy case raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence." *See United States v. Cockrell*, 587 F.3d 674, 679 (5th Cir. 2009) (quoting *United States v. Broussard*, 80 F.3d 1025, 1040 (5th Cir. 1996)). Further, when the extrinsic offense involves the same intent required to prove the charged offense, the extrinsic offense is relevant and the court is "required only to consider whether the requirements of Rule 403 are

---

[25] *Id.* at 15.

met under *Beechum*'s second prong." *Id.* (quoting *Broussard*, 80 F.3d at 1040). Here, it is undisputed that the extrinsic offenses and the charged offense involve the same intent: whether Juarez had knowledge of the alleged conspiracies and whether he intended to join them. *See United States v. Peters*, 283 F.3d 300, 307 (5th Cir. 2002). Because Juarez pleaded not guilty, and has not given the Court any pre-trial assurances that he does not dispute intent, the Government's evidence is relevant to proving intent. The Court proceeds to the second inquiry.

### 2. *The Probative Value of the Extrinsic Evidence Meets the Requirements of Rule 403*

The probative value of the Government's extrinsic evidence is clear. According to the Government's theory of the case, Juarez participated in the charged conspiracies not by handling any drugs directly, but by providing substantial assistance to drug dealers in the form of firearms, vehicles, and police intelligence. Likewise, according to the Government's extrinsic evidence, Juarez allegedly assisted drug dealers in other drug conspiracies in the same fashion. Having considered all of the available evidence of the charged offense and the extrinsic offenses, the Court finds that any potential prejudice caused by the extrinsic evidence does not outweigh its probative

value. Likewise, the extrinsic evidence meets the other requirements of Rule 403.

To evaluate thoroughly the potential prejudice of the Government's extrinsic evidence, the Court considers the following factors: (1) the Government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the offenses, and (4) whether the court can ameliorate any potential prejudicial effect with limiting instructions. *See United States v. Kinchen*, 729 F.3d 466, 473 (5th Cir. 2013).

The Court has already analyzed the Government's need for the extrinsic evidence. By pleading not guilty, Juarez placed his criminal intent directly at issue. Moreover, the Government represents that Juarez has repeatedly denied knowing that any of his alleged cohorts were drug dealers. Juarez has not provided the Court any assurances to the contrary. Although indicted co-conspirators may testify at trial, the Government needs corroborative evidence. *See Cockrell*, 587 F.3d at 682. The Government's extrinsic evidence also may help "eliminate[] alternative explanations, such as ignorance of drugs and the drug trade." *United States v. Thomas*, 294 F. App'x 124, 130 (2008). Therefore, the Court accepts the Government's contention that it will need the extrinsic evidence to satisfy its burden of proof at trial.

The similarity of the extrinsic offenses and the charged offense can cut both ways. Generally, similarity between the elements of an extrinsic offense and the elements of the charged offense "enhance[s] the probative value of the extrinsic evidence." *Id.* But extensive similarity between the offenses may also increase the risk of prejudice. *Id.* Similarity, on its own, however, does not require exclusion of the extrinsic evidence. *Cockrell*, 587 F.3d at 679. The Court must weigh the Government's need for the evidence against its potential prejudicial impact. "[W]hen the Government adduces strong evidence of intent, extrinsic evidence should be more readily excluded. Inversely, when the direct evidence of intent is slight, the probative value of extrinsic evidence is enhanced." *Thomas*, 294 F. App'x at 130. As explained, the extrinsic evidence of other drug conspiracies supports the Government's theory that Juarez knowingly, rather than unwittingly, furthered drug conspiracies by providing firearms, vehicles, and other means of support. And the Fifth Circuit has often found that "proof of prior drug activities is more probative than prejudicial in proving Rule 404(b) exceptions such as knowledge or intent." *United States v. Kinchen*, 729 F.3d 466, 474 (5th Cir. 2013) (quoting *United States v. Harris*, 932 F.2d 1529, 1534 (5th Cir. 1991)). To the extent that the extrinsic evidence has any prejudicial impact, the Court can offset such prejudice with a limiting instruction to the jury when the evidence is

admitted and before the jury deliberates. *See United States v. Ochoa-Rodriguez*, 564 F. App'x 740, 741 (5th Cir. 2014); *United States v. Bryant*, 264 F. App'x, 420, 421 (5th Cir. 2008).

Regarding the amount of time between the offenses, the Court notes that "temporal remoteness depreciates the probity of the extrinsic offense." *United States v. Beechum*, 582 F.2d 898, 915 (5th Cir. 1978). Here, Juarez allegedly participated in the charged offense, as well as the other drug conspiracies, at roughly the same time. According to the indictment, Juarez's conspiracy to distribute cocaine began "at a time unknown" and continued until about 2012. Juarez's conspiracy to possess firearms began sometime prior to July 17, 2013, and continued until April 2015.[26] Though the Government does not provide specific time periods for the Gallegos Conspiracy or the Castaneda Conspiracy, the Court is able to glean approximate dates from the available information. For example, the Government proposes to introduce evidence that in furtherance of the Gallegos Conspiracy, Juarez allowed conspirators to use his 2008 Cadillac Escalade. Even if this was the last act of assistance that Juarez allegedly provided to the Gallegos Conspiracy, he engaged in this conduct, at most, eight or nine years ago. *See United States v. Peters*, 283 F.3d 300, 312

---

[26] *Id.* at 2.

13

(5th Cir. 2002) (holding admissible evidence of a ten-year-old drug crime). More recently, Juarez's conversations with the FBA's confidential source from the "Castendas Conspiracy" all took place during 2011-2012. Therefore, the temporal proximity of the extrinsic offenses to the charged offense contributes to their probative value.

Finally, to avoid potentially overwhelming the intrinsic evidence of the crimes charged, the Court will allow the Government only one day in which to present its extrinsic evidence. This evidence must also be presented separately from the Government's case-in-chief evidence. The Government's presenting the extrinsic evidence in this manner will avoid confusing the issues or needlessly presenting cumulative evidence. Further, the Court's limiting instruction will be more effective if the extrinsic evidence is presented separately. Therefore, subject to these limitations, the Court will permit the Government to introduce the extrinsic offense evidence at trial.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS the Government's motion to introduce extrinsic evidence of Juarez's involvement in other drug conspiracies.

IT IS ORDERED that the Government shall present the extrinsic evidence separately from its case-in-chief evidence and that the presentation of extrinsic evidence shall not exceed one day of testimony. The Court will provide the jury with a limiting instruction when the evidence is presented and again before the jury retires for deliberation.

New Orleans, Louisiana, this __7th__ day of January, 2016.

_____
SARAH S. VANCE

UNITED STATES DISTRICT JUDGE