UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 11-95 |
| NOE JUAREZ | SECTION "R" (5) |

## ORDER AND REASONS

Before the Court is Noe Juarez's *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.[1] The Government opposes the motion.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. For the following reasons, the Court denies Juarez's Section 2255 motion and denies a certificate of appealability.

## I.   BACKGROUND

This collateral proceeding arises from ex-Houston police officer Noe Juarez's participation in a drug-trafficking conspiracy. At trial, the Government sought to prove that Juarez used his position as a police officer

---

[1]   *See* R. Doc. 479.
[2]   *See* R. Doc. 483.

to assist the Grimaldo drug organization—an arm of the Los Zetas drug cartel—in its efforts to traffic drugs from Mexico into the United States.[3] At trial, the Government showed that Juarez provided members of the Grimaldo drug organization with vehicles, firearms, body armor, police scanners, and helped co-conspirators to evade detection by law enforcement. For example, Government witness and co-conspirator, Sergio Grimaldo, testified that Juarez bought him a BMW, a Chrysler, and an Escalade.[4] According to Sergio Grimaldo, keeping the vehicles in Juarez's name made it "easier . . . to move around late at night with the cocaine without getting detected by the police."[5] Sergio Grimaldo also testified that Juarez sold him an AR-15 Bushmaster (an assault rifle),[6] a bullet-proof vest,[7] and police scanners.[8] Another Government witness, Aldo Perez, similarly testified that Juarez offered to sell him an AR-15 and a Colt .45.[9] Perez also noted he met Juarez on multiple occasions at El Chaparral, a nightclub, so that he could pay Juarez thousands of dollars in cash.[10]

---

[3]   *See* R. Doc. 483 at 2.
[4]   *See* R. Doc. 418 at 235 (Direct Examination of Sergio Grimaldo 235: 13-14).
[5]   *See id.* at 244 (Direct Examination of Sergio Grimaldo 244: 20-22).
[6]   *See id.* at 254 (Direct Examination of Sergio Grimaldo 254: 17).
[7]   *See id.* at 255 (Direct Examination of Sergio Grimaldo 255: 9-17).
[8]   *See id.* at 256 (Direct Examination of Sergio Grimaldo 256: 12).
[9]   *See* R. Doc. 418 at 142 (Direct Examination of Aldo Perez 142: 17-18).
[10]  *See id.* at 137-39 (Direct Examination of Aldo Perez 137-39).

Juarez's defense at trial was that he believed that the Grimaldos were legitimate businessmen.  Indeed, Juarez's lawyer pursued this line of defense in his closing statement, arguing to the jury that "the government's case [is] really based on asking you at the end of the day to assume . . . very important facts."[11]  One of those facts, defense counsel contended, was "that Mr. Juarez knew" that the Grimaldos were "drug dealers."[12]  Ultimately, though, a unanimous jury found Noe Juarez guilty of one count of conspiracy to distribute and to possess with the intent to distribute five kilograms or more of cocaine hydrochloride,[13] and one count of conspiracy to possess firearms in furtherance of a drug trafficking crime.[14]

Juarez now alleges that his constitutional rights were violated at trial.  Specifically, Juarez contends that he received ineffective assistance from his lawyer for two reasons.  First, Juarez contends that his lawyer failed to investigate and call witnesses that would have been helpful to his case.[15]  And second, Juarez contends that his lawyer failed to argue that the Government tampered with a video of Juarez's interview with federal agents after Juarez's

---

[11]  *See* R. Doc. 421 at 21 (Defense Counsel's Closing Statement 21: 16-20).
[12]  *See id.* at 21 (Defense Counsel's Closing Statement 21: 16-20).
[13]  *See* R. Doc. 342-2 at 1.
[14]  *See id.* at 3.
[15]  *See* R. Doc. 479 at 4.

3

arrest.[16]  The Government contends that Juarez was not denied effective assistance of counsel at trial,[17] and it contends that Juarez's allegation with respect to the video has no basis in reality.[18]  The Court considers the motion below.

## II.   LEGAL STANDARD

Section 2255 of Title 28 of the United States Code provides that a federal prisoner serving a court-imposed sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  Only a narrow set of claims are cognizable on a Section 2255 motion:  (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."  *Id*.  A claim of error that is neither constitutional nor jurisdictional is not cognizable in a Section 2255 proceeding unless the error constitutes "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States*

---

[16]  *See id*. at 5.
[17]  *See* R. Doc. 483 at 6-9.
[18]  *See id*. at 9-10.

*v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

When a Section 2255 motion is filed, the district court must first conduct a preliminary review. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the Court must order the Government to file a response or to take other appropriate action. *Id.* The Court may then order the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. Rules Governing Section 2255 Proceedings, Rules 6-7.

After reviewing the Government's answer and any supplementary materials submitted by the parties, the Court must determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 proceedings, Rule 8. The Court must hold an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No evidentiary hearing is required if the prisoner fails to produce any "independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258,

5

264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the defendant bears the burden of establishing his claims of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993). For other "trial" errors, the Court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Id.* at 637-38 (citation omitted); *see also United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht* in a Section 2255 proceeding). If the Court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

To establish a claim of constitutionally ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's

6

deficient performance, the likely outcome of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). The petitioner must satisfy both parts of the *Strickland* test. If the Court finds that the petitioner has made an insufficient showing as to either part, the Court may dispose of the claim without addressing the other. *See id.* at 697.

As to the first part of the *Strickland* test, counsel's performance must be compared to "an objective standard of reasonableness, mindful of the strong presumption of adequacy." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). A court should not find inadequate representation merely because, with the benefit of hindsight, the Court disagrees with counsel's strategic choices. *Id.* The Fifth Circuit has made clear that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). As to the second part of *Strickland*, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. *Strickland* defines a "reasonable probability" as a "probability sufficient to undermine confidence in the outcome." *Id.*

1.   *Failing to Investigate and Interview Potential Witnesses*

Juarez first argues that his counsel was ineffective in failing to investigate and interview potential defense witnesses.[19]  On this ground, Juarez identifies six uncalled witnesses—Steven Leatherman, Osvaldo Gutierrez, David Villarin, Soleka Gallegos, Isias Gallegos, and Judith Grimaldo.[20] According to Juarez, these witnesses would have supported the defense's position that Juarez believed he was involved in a legitimate business.[21]

The *Strickland* framework applies in the context of uncalled witnesses. Juarez must show that (1) counsel's failure to call witnesses fell below an objective standard of reasonableness and (2) there is "a 'reasonable probability' that the uncalled witnesses would have made [a] difference to the result."  *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008) (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).  The Fifth Circuit "has repeatedly held that complaints of uncalled witnesses are not favored . . . because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated

---

[19]   *See* R. Doc. 479 at 4.
[20]   *See id.* at 23.
[21]   *See id.*

8

are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

To prevail, Juarez must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.* Moreover, the Fifth Circuit has consistently denied ineffective assistance of counsel claims when the defendant has failed to present some evidence from the uncalled witness, by affidavit or otherwise, setting out the content of the witness's testimony, and that the witness was available to testify and would have done so. *Gray v. Epps*, 616 F.3d 436, 443 (5th Cir. 2010) (noting that the absence of an affidavit from two lay witnesses indicating a willingness to testify "does not allow [the Court] to conclude" that the two witnesses would have testified at trial); *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) (noting that the "[petitioner] has never provided any court with affidavits (or similar matter) from any of the unidentified favorable witnesses suggesting what they would have testified to," rendering the petitioner's representation on the impact of the proposed testimony "conclusory speculation").

Here, Juarez does not include an affidavit or other evidence from any of the six uncalled witnesses he identifies. For five of the six witnesses—

Steven Leatherman, Osvaldo Gutierrez, David Villarin, Soleka Gallegos, and Isias Gallegos—Juarez simply names them in passing,[22] and asserts that, as a general matter, they would have supported Juarez's argument that he thought the Grimaldos were not involved in an illegal business. And while Juarez indicates that the sixth witness, Judith Grimaldo, was available to testify and speculates as to the content of her testimony,[23] Juarez still fails to provide any affidavit or similar evidence from Judith Grimaldo herself. Accordingly, the Court cannot conclude from Juarez's conclusory assertions that any of these witnesses would have testified at trial or have given testimony favorable to Juarez. *Gray*, 616 F.3d at 443; *Sayre*, 238 F.3d at 636.

Even assuming that these six witnesses would have testified at trial, Juarez does not demonstrate a reasonable probability that "the uncalled witnesses would have made [a] difference to the result." *Bray*, 265 F. App'x at 298. Other evidence supported the jury's unanimous conclusion that Juarez conspired to distribute illegal narcotics and to possess a firearm in furtherance of a drug-trafficking offense. For example, Sergio Grimaldo

---

[22] *See id.*
[23] Juarez represents that Judith Grimaldo is the mother of two Government witnesses, Sergio and Efrain Grimaldo, and that she would have testified that her sons often preyed upon unwitting participants in their criminal enterprise. *See* R. Doc. 479 at 4.

testified that, early in their working relationship, he had a conversation with Juarez at a restaurant. Sergio Grimaldo testified that, in the course of that conversation, Juarez indicated to him that he was aware of the Grimaldo's drug business[24] and that "he didn't want to get involved in those types of issues."[25] Grimaldo testified that "[Juarez] knew [he] was moving coke,"[26] and Grimaldo also testified that Juarez saw him using cocaine in the VIP Lounge of the El Chaparral,[27] where Juarez, Sergio Grimaldo and others would frequently socialize.

In addition, the Government submitted extrinsic evidence of two uncharged conspiracies, referred to by the parties as the "Gallegos conspiracy" and the "Casteneda conspiracy." The evidence involved "an audio and video recording of Juarez speaking to an FBI informant" in which "Juarez offered to sell the informant weapons and body armor to ship to drug dealers in Mexico" and "instructed [the informant] to delete and replace the serial numbers on the firearms she was provided." *United States v. Juarez*, 866 F.3d 622, 626 (5th Cir. 2017). On appeal, the Fifth Circuit affirmed both

---

[24] *See* R. Doc. 418 at 236 (Direct Examination of Sergio Grimaldo 236: 17-20).
[25] *See id.* at 236-37 (Direct Examination of Sergio Grimaldo 236-37: 24-25, 1-2).
[26] *See id.* at 239 (Direct Examination of Sergio Grimaldo 239: 22).
[27] *See id.* at 262 (Direct Examination of Sergio Grimaldo 262: 25).

Juarez's conviction and the Court's admission of the extrinsic evidence, noting that, "[t]he Government's need for the evidence, the similarity of the offenses, and the closeness in time between the charged and uncharged conspiracies made the extrinsic evidence highly probative in proving" that Juarez knowingly participated in the Grimaldos' illegal business. *Id.* at 630. In light of the other evidence the Government used to secure Juarez's conviction, the Court finds that Juarez does not demonstrate a reasonable probability that the testimony of Judith Grimaldo, or any of his other proposed witnesses, would have altered the outcome of the trial. Consequently, Juarez does not succeed on his claim that his lawyer provided ineffective assistance in declining to call these witnesses. *Bray*, 265 F. App'x at 298.

      2.    *Failing to Assert that the Government Tampered with Evidence*

Next, Juarez argues that his counsel was ineffective in failing to allege that a videotape of Juarez's interview with federal officers following his arrest had been altered.[28] Specifically, Juarez alleges that the tape had been altered to remove "threats, plots, and designs" by the interviewing agents.[29] Juarez claims that the video tape would have exposed the "criminal plot" by

---

[28]    *See* R. Doc. 479 at 5.
[29]    *See id.* at 27.

12

the agents to "rig" the outcome of the trial.[30] Juarez asserts that he informed his counsel that the videotape of his interview had been altered, but his counsel did not raise the issue at trial.[31] The Government contends that Juarez's representations are untrue.[32] Government counsel represents that he provided Juarez's lawyer with the un-redacted video in its entirety, and that the video did not contain any of the threatening content that Juarez alleges.[33]

The Court denies Juarez's ineffective assistance claim on this ground as well. Juarez's allegations are conclusory and unsupported by the record. Such allegations do not raise a constitutional issue in a post-conviction collateral proceeding. *See, e.g.*, *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) ("[M]ere conclusory allegations on a critical issue" are insufficient to support Section 2255 relief); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *cf. Ross v. Estelle*, 694 F.2d 1008, 1011 n.2 (5th Cir. 1983) ("[B]are, conclusory allegations unsupported by other indicia of reliability in the

---

[30] *See id.* at 28.
[31] *See id.* at 27.
[32] *See* R. Doc. 483 at 9.
[33] *See id.*

record, do not compel a federal district court to hold an evidentiary hearing."). Accordingly, the Court finds that Juarez cannot succeed on his theory that counsel was ineffective in failing to allege that the interview tape had been altered.

## B. Other Grounds for Relief

The Government contends that Juarez listed additional grounds for relief in his *pro se* Section 2255 form.[34] The Government is mistaken. The Government refers to the portion of the *pro se* form where Juarez listed the errors he raised on direct appeal.[35] There, Juarez indicated that he argued on direct appeal that the Court improperly (1) admitted extrinsic evidence, (2) instructed the jury on deliberate ignorance, and (3) applied U.S.S.G. § 3B1.5, which provides a sentencing enhancement when a defendant's drug-trafficking crime "involve[s] the use of body armor." In his reply to the Government's opposition, Juarez indicates that he wishes to reassert these arguments in this collateral proceeding, stating that these errors are "subsumed" within his ineffective assistance claim.[36] Even if Juarez could be considered to have raised these issues in his Section 2255 motion, they have no merit. Juarez gives no explanation of how these issues would give rise to

---

34     *See id.* at 6.
35     *See* R. Doc. 479 at 2.
36     *See* R. Doc. 489 at 1.

14

a *Strickland* claim.  As such, his contention is barely a conclusory assertion and fails to raise a constitutional issue of ineffective assistance of counsel.

### C.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2255 Proceedings, Rule 11(a).  The Court may issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rules Governing Section 2255 Proceedings, Rule 11(a) (noting that § 2253(c)(2) supplies the controlling standard).  The "controlling standard" for a certificate of appealability requires the petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented [are] adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 1983)).  For the reasons set forth in this Order, Juarez has not made a substantial showing of the denial of a constitutional right.

## IV. CONCLUSION

For the foregoing reasons, Juarez's motion to vacate, set aside, or correct his sentence is DENIED, and the Court will not issue a certificate of appealability.

New Orleans, Louisiana, this __31st__ day of December, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE